UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA W. LEE, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>RETAIL STORE EMPLOYEE BUILDING CORPORATION, et al.,<br><br>    Defendants. | Case No. 15-CV-04768-LHK<br><br>**ORDER GRANTING MOTIONS TO DISMISS AS TO PLAINTIFFS MARIA AND WEN LEE**<br><br>Re: Dkt. Nos. 60, 69 |

Plaintiffs Maria and Wen Lee (collectively, "Plaintiffs") bring this action against Retail Store Employee Building Corporation; Casa del Pueblo Apartment; and Barcelon Associates Management Corp. (collectively, "Defendants").[1] Before the Court are two motions to dismiss the First Amended Complaint, one filed by Barcelon Associates Management Corp. and another filed by Retail Store Employee Building Corporation and Casa del Pueblo Apartment. ECF No. 60 ("Retail Mot."); ECF No. 69 ("Barcelon Mot."); ECF No. 52 ("FAC"). The Court finds these

---

[1] The FAC also named Lin Lee ("Lin") as a Plaintiff and Preservation Partners Management Group, Inc. ("PPMG") as a Defendant. PPMG was dismissed with prejudice on July 6, 2016. ECF No. 83. Lin was dismissed without prejudice on August 5, 2016, and an Order to Show Cause was issued as to whether Lin should be dismissed with prejudice because of failure to prosecute. ECF No. 93.

1
Case No. 15-CV-04768-LHK
ORDER GRANTING MOTIONS TO DISMISS AS TO PLAINTIFFS MARIA AND WEN LEE

motions suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and thus VACATES the motions hearing set for August 11, 2016, at 1:30 p.m. The case management conference, currently set for August 11, 2016, at 1:30 p.m., is CONTINUED to September 14, 2016, at 2:00 p.m. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendants' motion to dismiss.

## I. BACKGROUND

### A. Factual Background

From 2000 to 2013, Maria Lee ("Maria") lived at the Casa del Pueblo Apartment ("CDP") complex, a senior living facility. During this period, CDP was owned by Retail Store Employees Building Corporation ("Retail Store") and managed by Barcelon Associates Management Corp. ("Barcelon"). FAC ¶¶ 5-4; 5-5; 5-7.

Maria is in her late 80s and suffers from dementia. From 2000 to 2010, it appears that Maria lived alone at CDP, while her husband, Joseph Lee ("Joseph"), lived at a nursing home. *Id.* ¶ 5-11. In late 2010, Joseph suffered a stroke. *Id.* As a result of his stroke, Joseph left the nursing home and "came back to [live with Maria at] CDP." *Id.* After Joseph returned to CDP, Maria's son, Wen Lee ("Wen"), stayed at CDP from time to time to care for Joseph and Maria. *Id.* Joseph passed away on November 17, 2012. *Id.* ¶ 5-12.

According to Plaintiffs, during Maria's tenancy at CDP, Maria was subject to "bullying" by several CDP staff members. *Id.* ¶ 5-8. In particular, in 2004, Plaintiffs allege that a resident stole coats from Maria and Joseph while the couple was abroad. When Maria asked for help in recovering these items, CDP staff mocked Maria. *Id.* ¶ 5-9. After Joseph's death, CDP staff allegedly entered Maria's apartment to search the apartment without Maria's consent. *Id.* ¶¶ 5-13; 5-18. Finally, from December 2012 to September 2013, Plaintiffs allege that Defendants repeatedly threatened to evict Maria.

On September 19, 2013, Retail Store and CDP filed an unlawful detainer complaint against Maria, Wen, and Maria's daughter, Lin Lee ("Lin") in Santa Clara County Superior Court. The unlawful detainer complaint states that Maria "materially violated the terms of the lease agreement

and created and/or allowed the creation of a nuisance upon the premises." ECF No. 52 at 28. In particular, Maria allowed Lin to reside at CDP without "obtaining the prior written approval" of Retail Store and CDP—a violation of Maria's rental agreement. *Id.* The complaint further states that Maria's "tenancy has been fraught with constant complaints from neighbors who have been terrified by threatening, hostile, bizarre, and alarming behavior." *Id.*

In 2010, for example, Lin "locked [Maria] out of the apartment and angrily abused [CDP] staff when they attempted to intervene." *Id.* Maria was also given infraction notices from CDP on March 6, 2012; April 24, 2012; June 19, 2012; July 25, 2012; October 23, 2012; and November 30, 2012 for "harassing residents, staff and caregivers; knocking on their doors; making unwanted contact; and physically assaulting others." *Id.* at 29. The unlawful detainer complainer also produced notes that CDP staff members had received from Maria which stated, among other things, that "[e]vil fate will befall you soon. Your parents die and your son die," and that "[y]ou stinky prostitute putting stuff in my garlic bowl. Almighty will punish you. Your parents will die. You are dirty and rotten." *Id.* at 30. Maria, Wen, and Lin did not respond to the unlawful detainer complaint. *Id.* ¶ 5-25. Accordingly, on October 17, 2013, the Santa Clara County Sheriff's Office evicted Maria from CDP.

**B. Procedural History**

On October 17, 2014, Maria filed a housing discrimination complaint with the U.S. Department of Housing and Urban Development ("HUD"), which asserted that she was the subject of discriminatory treatment by CDP staff. Pursuant to HUD policy, Maria's complaint was forwarded to the California Department of Fair Employment and Housing ("DFEH"). On November 6, 2015, DFEH closed Maria's case after finding that she had presented insufficient evidence of discrimination.

Plaintiffs filed the original complaint in federal court on October 15, 2015, which mirrored the allegations set forth in Maria's HUD complaint. The original complaint asserted causes of action under the Fair Housing Amendments Act ("FHAA") and Fair Employment and Housing Act ("FEHA"). ECF No. 1. On April 6, 2016, Retail Store and CDP moved to dismiss the

3

1  original complaint. ECF No. 39.  In lieu of opposing this motion, Plaintiffs filed the FAC, which
2  kept the same two causes of action but added Barcelon as a Defendant.  On June 17, 2016,
3  Barcelon declined magistrate judge jurisdiction, and on June 21, 2016, the instant action was
4  reassigned to the undersigned judge.  ECF No. 79.

Retail Store and CDP moved to dismiss the FAC on May 13, 2016.  Maria and Wen filed a response on June 20, 2016, and Retail Store and CDP filed a reply on June 29, 2016.  ECF No. 76 ("Retail Opp'n"); ECF No. 81 ("Retail Reply").  Barcelon moved to dismiss the FAC on June 9, 2016.  Maria and Wen filed a response on June 21, 2016, and Barcelon filed a reply on June 30, 2016.  ECF No. 78 ("Barcelon Opp'n"); ECF No. 82 ("Barcelon Reply").

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.  Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish

that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir. 1995)).

### B. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

The arguments in Defendants' motions to dismiss are substantially identical to one another. First, Defendants argue that Maria lacks capacity to sue. Next, Defendants contend that Wen does not have standing and that the FAC fails to allege facts sufficient to state a claim under the FHAA or FEHA. The Court addresses these arguments in turn.

### A. Maria Lee

Federal Rule of Civil Procedure 17 "governs the capacity of parties to sue or be sued in federal court." *Bennett v. Cnty. of Riverside*, 2014 WL 4162564, *2 (C.D. Cal. Aug. 20, 2014). Specifically, under Rule 17(b)(1), the "[c]apacity to sue or be sued is determined . . . by the law of the individual's domicile." Fed. R. Civ. P. 17(b)(1). Because Maria is domiciled in California, California law applies.

Under California law, "[t]he test for incompetence . . . is whether the party has the capacity to understand the nature or consequences of the proceeding, and is able to assist counsel in preparation of the case." *In re Jessica G.*, 113 Cal. Rptr. 2d 714, 718 (Ct. App. 2001). If a party is found to be incompetent based on this test, then that party may only appear in state court through "a guardian or conservator of the estate or by a guardian ad litem." Cal. Civ. Proc. Code § 372(a)(1). Similarly, an incompetent party may only bring suit in federal court through a duly

5
Case No. 15-CV-04768-LHK
ORDER GRANTING MOTIONS TO DISMISS AS TO PLAINTIFFS MARIA AND WEN LEE

appointed representative, which is defined in the Federal Rules of Civil Procedure as a "general guardian," a "committee," a "conservator," or a "like fiduciary." Fed. R. Civ. P. 17(c)(1). An "incompetent person who *does not* have a duly appointed representative may sue [in federal court] by a next friend or by a guardian ad litem." Fed. R. Civ. P. 17(c)(2) (emphasis added). Federal courts may, in their broad discretion, appoint a guardian ad litem for an incompetent party. *Davis v. Walker*, 745 F.3d 1303, 1310 (9th Cir. 2014).

The parties here do not dispute that Maria is incompetent under the test set forth in *In re Jessica G. See* Retail Opp'n at 6; Barcelon Opp'n at 6. In fact, Plaintiffs acknowledge that Shuling Liu ("Shuling"), a CDP staff member, is Maria's legal guardian. FAC ¶ 5-27; *see also id.* ¶ 5-28 ("Plaintiff Wen . . . discovered [in October 2013] that . . . Shuling had become legal guardian of Plaintiff Maria when In Home Support Service (IHSS) explained to Plaintiff Wen that IHSS could only talk to . . . Shuling about Plaintiff Maria's care."). In addition, Plaintiffs also attached to the FAC a March 20, 2012 letter from Dr. Andrew Wong ("Wong"). In this letter, Wong states that he had "examined Maria" and concluded that Maria "suffers from moderate senile dementia." *Id.* at 21. "She does not have the capacity to manage her financial affairs. She needs assistance in managing her daily activities and her health and safety matters. She cannot enter into any legally binding decisions on her own." *Id.*

In sum, because Maria is incompetent, Maria may only bring suit in federal court through Shuling, her duly appointed representative. Shuling, however, has not brought suit on Maria's behalf, and the FAC does not name Shuling as a Plaintiff or as Maria's duly appointed representative. Thus, pursuant to *In re Jessica G.* and Federal Rule of Civil Procedure 17, Maria may not proceed as a party in the instant action.

Plaintiffs' sole response to this conclusion is that Maria "recently retained counsel," and Wen, Maria's son, "will apply to the court to be appointed as [Maria's] guardian ad litem." Barcelon Opp'n at 6. "Therefore, [Maria's] interests will be protected by both her counsel and her son," and Defendants' "argument that [Maria] lacks capacity to sue is moot." *Id.*

This contention lacks merit. As an initial matter, Wen has not even applied to be Maria's

6
Case No. 15-CV-04768-LHK
ORDER GRANTING MOTIONS TO DISMISS AS TO PLAINTIFFS MARIA AND WEN LEE

guardian ad litem. Moreover, merely applying to be one's guardian ad litem does not "moot" anything—the Court must still independently examine whether the application is well taken, and has broad discretion to deny a guardian ad litem application.

More importantly, where—as in this case—a legal guardian "ha[s] already been appointed by the state courts, [the federal district court] may not appoint a guardian ad litem." *Bennett*, 2014 WL 4162574, *2. This principle reflects the language in Federal Rule of Civil Procedure 17(c)(2), which states that an incompetent person "may sue . . . by a guardian ad litem" when that person "*does not* [already] have a duly appointed representative." Fed. R. Civ. P. 17(c)(2) (emphasis added). Thus, "[a]s a general rule, a federal court cannot appoint a guardian ad litem in an action in which the . . . incompetent already is represented by someone who is considered appropriate under the law of the forum state." 2014 WL 4162574, *2.

This general rule has been followed by several district courts in the Ninth Circuit. *See id.*; *Hogan v. Fresno Cnty. Sheriff's Deputy Robinson*, 2005 WL 2064113, *7 (E.D. Cal. Aug. 24, 2005) (stating rule); *K.T. v. Ramos*, 2012 WL 443732, *4 (D. Ariz. Feb. 13, 2012) (same). The rule has also been applied by a number of circuit courts. *See, e.g.*, *T.W. by Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir. 1997) ("Unless—and here we come to the heart of the dispute in this case—the court finds the [incompetent party's] general representative to be inadequate, it should not allow the general representative to be bypassed by appointing a special representative to litigate on behalf of [the incompetent party]."); *id.* at 895–96 (citing supporting precedent from First and Fifth Circuits).

In applying this general rule, courts have held that, "[w]here a representative has interests that conflict with the incompetent person whom he represents or the representative is unable, unwilling or fails to participate without reason, then the [d]istrict [c]ourt may appoint a guardian ad litem." *Hogan*, 2005 WL 2064113, *7. However, in order for this exception to apply, "there should be compelling evidence in the record that the appointed guardian had abused his trust in refusing to endorse the suit." *Id.* (internal quotation marks and alterations omitted); *see also T.W.*, 124 F.3d at 895 ("[E]ven if the [party's] existing representative is in fact inadequate, [a guardian

7
Case No. 15-CV-04768-LHK
ORDER GRANTING MOTIONS TO DISMISS AS TO PLAINTIFFS MARIA AND WEN LEE

ad litem] can't jump into the case without first obtaining a court order disqualifying the existing representative from representing the [party] in the suit.").

This rule and its corresponding exception govern the instant case. Maria has a legal guardian under California law: Shuling. Maria is therefore already being "represented by someone" who may bring suit on her behalf. *Bennett*, 2014 WL 4162574, *2. In addition, Plaintiffs have offered no evidence as to why Shuling is an inadequate guardian. Indeed, Wen has not even applied to be Maria's guardian ad litem, despite (1) learning that Shuling was Maria's legal guardian in October 2013, (2) filing the original complaint in the instant action ten months ago, and (3) stating two months ago that he would apply to be Maria's guardian ad litem. Under these circumstances, the Court finds that Maria may not proceed as a party in the instant action.

As an additional point, even if Wen were to apply to be Maria's guardian ad litem, the Court would, in its discretion, deny Wen's application. Presumably, Shuling was appointed Maria's legal guardian by a California court, applying California law. California law contains numerous detailed provisions which describe the responsibilities of a legal guardian and a guardian ad litem, the process by which legal guardianships and guardians ad litem may be terminated, and the process by which new legal guardians and guardians ad litem may be appointed. *See, e.g.*, *In re Carrie W.*, 2 Cal. Rptr. 3d 38 (Ct. App. 2003) (describing procedures for termination of legal guardianship); *Conservatorship of Drabick*, 245 Cal. Rptr. 840 (Ct. App. 1988) (describing procedures for appointment of conservatorship); Cal. Civ. Proc. Code § 372 (listing factors to consider in appointing guardian ad litem). The proper forum for Wen to contest Maria's legal guardianship is therefore in state court. It would make little sense—for purposes of comity, federalism, and consistency in the interpretation of state law—for a federal court to weigh in on Maria's guardianship disputes.

Thus, because Maria does not have legal capacity to sue and because Shuling has not brought suit on Maria's behalf, Maria may not proceed as a Plaintiff in the instant case. Accordingly, Defendants' motions to dismiss as to Maria are GRANTED. Plaintiffs, however, shall have leave to amend because Maria's claims are not futile. Shuling could decide to represent

1  Maria in this action, or a state court may terminate Shuling's legal guardianship and appoint a new
2  legal guardian. Defendants' motion to dismiss as to Maria are therefore GRANTED without
3  prejudice.

### B. Wen Lee

As to Wen, Defendants argue that Wen does not have standing to bring suit and that the FAC "fail[s] to state facts that [demonstrate that] any conduct of [Defendants] was a result of [Maria's] dementia and/or that [Maria's] dementia was a motivating factor for [Defendants'] actions." Barcelon Mot. at 9.[2] These arguments are examined in turn.

#### 1. Standing

First, on standing, in *Harris v. Itzhaki*, 183 F.3d 1043, 1049 (9th Cir. 1999), the Ninth Circuit "held that claims brought under the Fair Housing [Amendments] Act are to be judged under a very liberal standing requirement." "Unlike actions brought under other provisions of civil rights law, under the FHA[A] the plaintiff need not allege that he or she was a victim of discrimination." *Id.* at 1049–50. "Rather, the sole requirement for standing under the Act is the Article III minima of injury in fact." *Id.* at 1050 (internal quotation marks omitted). "To meet this requirement, a plaintiff [must] allege that as a result of the defendant's discriminatory conduct he has suffered a distinct and palpable injury." *Id.* (internal quotation marks and alteration omitted).

There is some uncertainty as to whether *Harris*, which relied upon the U.S. Supreme Court's decision in *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979), remains good law in light of *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011). In *Thompson*, the U.S. Supreme Court appeared to refer to part of its standing analysis in *Gladstone* as "dictum [which] was ill-considered." *Id.* at 176. Post-*Thompson*, federal courts are split as to whether a plaintiff may establish FHAA standing by simply meeting the minimum requirements set forth under Article III, or whether something more is needed. *Compare City of Miami v. Bank of Am.*

---

[2] Defendants' contentions apply with equal force to Wen's claims under the FHAA and FEHA, as the Ninth Circuit has determined that "the same standards apply to FHA[A] and FEHA claims." *Walker v. City of Lakewood*, 272 F.3d 1114, 1131 n.8 (9th Cir. 2001); *Huynh v. Harasz*, 2016 WL 2757219, *21 (N.D. Cal. May 12, 2016).

*Corp.*, 800 F.3d 1262, 1277 (11th Cir. 2015) (holding that *Gladstone* still applies), *with Cnty. of Cook v. Wells Fargo & Co.*, 115 F. Supp. 3d 909, 917–18 (N.D. Ill. 2015) (adopting more restrictive standing requirements after *Thompson*). The Ninth Circuit has not yet spoken on this issue, nor have the parties briefed it.

In any event, the Court need not weigh in on this debate because Wen has failed to show that he was injured even under the more relaxed standing requirements established in *Gladstone*. Indeed, there are no allegations in the FAC that explain how Wen was harmed as a result of CDP's alleged mistreatment of Maria. Wen was not a CDP resident, and Plaintiffs do not allege that Wen lived with Maria on a permanent basis. At most, Wen stayed with Maria from time to time to help care for her. There has, in sum, been no showing that CDP's alleged bullying of Maria caused Wen to suffer a "distinct and palpable injury" necessary to establish standing.

Case law supports the Court's finding. In *Sturm v. Davlyn Investments, Inc.*, 2013 WL 8604760, *3 (C.D. Cal. Nov. 6, 2013), plaintiff lived with her disabled mother for a brief period of time at an apartment complex. Plaintiff "argue[d] that she ha[d] standing to bring a disability discrimination claim because her disability accommodation requests, made on behalf of her mother, were ignored and she therefore had to assist her disabled mother on a daily basis—constituting an injury." *Id.* However, plaintiff admitted that "she [had] terminated her college studies in New York and moved to California so that she could care for her mother due to her [mother's] disability . . . even *before* moving into [defendant's apartment complex] and before finding out it lacked certain disability accommodations." *Id.*

Under these facts, the *Sturm* court concluded that plaintiff did "not establish a causal connection, required for Article III standing, between her asserted 'injury' of caring for her disabled mother and [d]efendants' alleged discrimination against [plaintiff's mother] and refusal to accommodate her requests at the [apartment complex]." *Id.*; *see also id.* ("[Plaintiff] does not present any evidence that she was discriminated against due to her association with her disabled mother."). The district court rejected plaintiff's "assertion that simply witnessing discrimination [against plaintiff's mother] constitute[d] an injury-in-fact sufficient for Article III standing." *Id*.

10

As in *Sturm*, Wen has not demonstrated how CDP's alleged mistreatment of Maria caused Wen injury. Plaintiffs in both cases simply provided care to an ailing parent on a temporary basis. This sort of relationship, without more, does not constitute the sort of injury necessary to state a FHAA or FEHA claim.

Plaintiffs' citation to *Mountain Side Mobile Estates Partnership v. Secretary of Housing and Urban Development*, 56 F.3d 1243 (10th Cir. 1995), and *Steven v. Hollywood Towers and Condominium*, 836 F. Supp. 2d 800 (N.D. Ill. 2011) does not compel a contrary result. In *Mountain Side*, plaintiff resided permanently with his girlfriend and his girlfriend's three children. The family was subsequently evicted for violating a park rule which prohibited families of more than three people from living in the park. 56 F.3d at 1247. Plaintiff claimed that this rule constituted a discriminatory housing practice. *Id.* at 1249. On standing, the Tenth Circuit held that plaintiff had shown that he had been injured as a result of this housing practice. Although plaintiff was not the biological father or legal custodian of his girlfriend's children, plaintiff and his girlfriend considered themselves to be husband and wife, plaintiff resided permanently in the mobile home park, and plaintiff was injured when he was evicted from the park.

Similarly, in *Steven*, the district court concluded that the spouse of a disabled individual had standing to sue because he had lived on a permanent basis in the same home as the disabled individual, and had also been intimidated and harassed by defendants. 836 F. Supp. 2d at 814; *id.* at 814–15 ("Clearly, such spouses have standing under the FHAA when they are denied the ability to rent property or when they are retaliated against for opposing discrimination.").

Both of these cases—*Mountain Side* and *Steven*—differ markedly from the facts in *Sturm* and in the instant case. Plaintiffs in *Mountain Side* and *Steven* were permanent residents of the housing units at issue and were personally subject to discriminatory treatment because of their association with a particular individual. In *Sturm* and the instant case, on the other hand, plaintiffs were not permanent residents, and only stayed at the housing units on a temporary basis to care for their disabled parents. Moreover, like plaintiff in *Sturm*, there are no allegations that Wen suffered discriminatory treatment because of Maria's disability. Thus, Wen has not suffered a distinct and

palpable injury for FHAA or FEHA purposes.  Accordingly, Defendants' motions to dismiss Wen for lack of standing are GRANTED.

### 2. Failure to State a Claim

Aside from issues of standing, the Court would also grant Defendants' motions to dismiss because Wen has failed to show that Defendants' alleged mistreatment of Maria was due to Maria's disability.

Under the FHAA, it is unlawful:

> (1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter *because of a handicap of*—
> (A) that buyer or renter,
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> (C) any person associated with that buyer or renter.
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, *because of a handicap of*—
> (A) that person; or
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> (C) any person associated with that person.

42 U.S.C. § 3604(f) (emphasis added).  The FEHA contains a similar nexus requirement.  Cal. Gov't Code § 12955(d) (making it unlawful "[f]or any person . . . to discriminate against [another] *on the basis of . . .* disability.) (emphasis added).  Thus, even as a person associated with Maria, Wen would still, under the FHAA and FEHA, have to demonstrate that Maria was subject to discrimination because of Maria's disability.

The FAC fails to satisfy this requirement.  In Plaintiffs' opposition, Plaintiffs points the Court to paragraphs 9, 13, 14, 32, 33, 35, 36, 38, 39, 42, and 44 of the FAC.  These paragraphs, however, simply recount the fraught and contentious relationship between Maria and CDP.  None of these paragraphs mention the word "disability" or "handicap," much less refer to Maria's dementia.  There is, in sum, nothing in the FAC that indicates that Defendants mistreated Maria because of Maria's disability.  Instead, the vast majority of the FAC appears to be an attempt to challenge the assertions made in the unlawful detainer complaint filed against Maria and Wen.

FAC ¶¶ 5-24–5-38. That complaint was filed in state court, was litigated in state court, and was resolved in state court. Federal court is not the proper forum for Plaintiffs to re-litigate the unlawful detainer complaint.

Accordingly, because Wen does not have standing and because the FAC fails to show that Maria was subject to discrimination on the basis of her disability, Defendants' motions to dismiss as to Wen are GRANTED. However, Plaintiffs shall have leave to amend. It is possible that, through amendment, Plaintiffs will be able to allege facts to show that Maria was subject to disability discrimination and that Wen has standing to bring suit. Defendants' motion to dismiss as to Wen are therefore GRANTED without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the motions to dismiss filed by Barcelon and by Retail Store and CDP are GRANTED without prejudice. Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty days of this Order. Failure to meet this thirty-day deadline will result in a dismissal of this action with prejudice. In addition, as noted above, failure to cure the deficiencies identified will result in a dismissal with prejudice of the deficient parties, claims, or theories. Plaintiffs may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: August 9, 2016.

_____
LUCY H. KOH
United States District Judge

13
Case No. 15-CV-04768-LHK
ORDER GRANTING MOTIONS TO DISMISS AS TO PLAINTIFFS MARIA AND WEN LEE