UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA W. LEE, et al., | Case No. 15-CV-04768-LHK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| RETAIL STORE EMPLOYEE BUILDING CORPORATION, et al., | Re: Dkt. Nos. 111, 112 |
| Defendants. | |

Plaintiffs Maria and Wen Lee (collectively, "Plaintiffs") bring this action against Retail Store Employee Building Corporation; Casa del Pueblo Apartment; and Barcelon Associates Management Corp. (collectively, "Defendants"). Before the Court are two motions to dismiss the Second Amended Complaint. One is filed by Barcelon Associates Management Corp. ECF No. 112 ("Barcelon Mot."). The other is filed by Retail Store Employee Building Corporation and Casa del Pueblo Apartment. ECF No. 111 ("Retail Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss.

## I.      BACKGROUND

### A.      Factual Background

1

1    From 2000 to 2013, Maria Lee ("Maria") lived at the Casa del Pueblo Apartment ("CDP")

2    complex, a senior living facility.  SAC ¶ 8, 12.  During this period, CDP was owned by Retail

3    Store Employees Building Corporation ("Retail Store") and managed by Barcelon Associates

4    Management Corp. ("Barcelon").  *Id.* ¶ 7–8.  Maria is in her late 80s and was diagnosed with

5    dementia in 2012.  *Id.* ¶ 27.  Maria's husband, Yin-Chiau Joseph Lee ("Joseph") lived with Maria

6    in the apartment until he passed away in November 2012.[1]  *Id.* ¶ 12.

7    Plaintiff Wen Lee ("Wen"), Maria and Joseph's son, moved to San Jose from Taiwan to

8    take care of Maria and Joseph in 2011.  *Id.* ¶ 14.  Wen "became his parents' live-in caretaker in

9    mid-2011 and was a resident and lived in their apartment at CDP."  *Id.*  This allegation contradicts

10   the First Amended Complaint ("FAC"), which stated that Wen had been staying with Maria from

11   time to time after 2011.  ECF No. 96 ("First Order") at 2.

12   The SAC alleges that Maria's daughter, Lin Lee ("Lin"), lived with Maria until Wen came

13   to live at CDP in 2011.  SAC ¶ 25.  However, whether or not Lin actually moved out in 2011 has

14   been inconsistently pled.  According to the FAC, Lin lived with Maria and Wen for some time

15   after 2011.  Additionally, the Ninety Day Notice of Termination ("Eviction Notice") and the

16   unlawful detainer eventually brought in this case listed Lin as one of the people residing in

17   Maria's apartment and noted that part of the reason for the eviction was Lin's residence in the

18   apartment without permission.  FAC at 28.  In fact, in the original complaint and in the FAC, Lin,

19   along with Maria and Wen, sued Defendants for violations of the federal Fair Housing

20   Amendments Act ("FHAA") and the California Fair Employment and Housing Act ("FEHA").

21   However, Lin was dismissed without prejudice on August 5, 2016 for failure to prosecute, and an

22   Order to Show Cause was issued as to whether Lin should be dismissed with prejudice for failure

23   to prosecute.  ECF No. 93.  On August 25, 2016, Lin was dismissed with prejudice for failure to

24   prosecute.  ECF No. 99.

---

[1] The First Amended Complaint ("FAC") alleged that Joseph lived in a nursing home separate from Maria from 2000 to 2010 until he suffered a stroke and "came back to [live with Maria at] CDP."  ECF No. 52 ("FAC") ¶ 5–11.  However, this series of events is not mentioned in the SAC.

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

On July 5, 2011, Joseph and Maria granted Wen a "durable power of attorney." SAC ¶ 15 & Ex. 1 (copy of the "General Power of Attorney (With Durable Provision)"). The power of attorney made Wen the "attorney-in-fact" for Joseph and Maria "to the extent that [Joseph and Maria were] permitted by law to act through an agent." *Id.* Ex. 1. The power of attorney grants Wen this power with respect to "Claims and Litigation" and states that it "shall not be affected by the subsequent disability or incompetence of [Joseph or Maria]." *Id.*

### 1. Allegations of Abuse

Plaintiffs allege that Maria was subject to mistreatment by Shuling Liu ("Liu"), a CDP staff member. Specifically, Plaintiffs allege that "[f]rom 2004 until Wen Lee arrived to care for his parents, Shuling Liu called Ms. Lee "psycho" in Chinese ("shen-jing-bing"). Ms. Liu would often bully Ms. Lee by calling her "shen-jing-bing" (psycho)." *Id.* ¶ 18. Allegedly, Liu encouraged Maria's neighbor, Ms. Ma, to also call Maria psycho in Chinese, and Ms. Ma regularly did so in the presence of Liu. *Id.* ¶ 19. In 2008, Maria confronted Ms. Ma and asked her who had told her that Maria had a mental illness. *Id.* ¶ 20. Ms. Ma replied that "everyone in the building knows." *Id.*

Additionally, Maria believed that her neighbors "were entering her apartment and stealing her suitcase and clothing." *Id.* ¶ 17. Maria reported these "incidents" to CDP in 2006. *Id.* Allegedly, Liu would taunt Maria in front of other Chinese-speaking tenants by stating "Let's go to Maria's home to steal, shall we?" *Id.* ¶ 21.

Based on these facts, Plaintiffs allege that "[s]ince at least July 2004, Defendants have been aware that Maria Lee suffers from mental health disabilities. Since at least 2006, Defendants have been aware that because of those disabilities Ms. Lee has difficulty interacting with her neighbors." *Id.* ¶ 16.

In January 2009, Maria allegedly requested a "reasonable accommodation" due to her "ongoing issues with her neighbors." *Id.* ¶ 22. CDP allowed Maria to transfer to a different apartment in the same building. *Id.* ¶ 23.

As mentioned above, Maria's daughter, Lin, lived with Maria and Joseph at least until

2011 when Wen arrived from Taiwan. *Id.* ¶ 25. Allegedly, Defendants suspected that Lin was abusing Maria and Joseph and called Adult Protective Services on multiple occasions, but took no further actions to protect Maria and Joseph from Lin. *Id.* ¶ 24. In 2012, Defendants "formally received notice" that Maria had dementia. *Id.* ¶ 27.

### 2. Eviction

In June 2013, Defendants issued a Ninety Day Notice of Termination ("Eviction Notice") to Maria, Wen, and Lin. *Id.* ¶ 29. In August 2013, Maria was re-certified as being financially qualified to continue living at CDP and signed a new tenancy agreement. *Id.* ¶ 30. Despite Wen's alleged role as Maria's "live-in caretaker," Wen allegedly relied on this re-certification, and traveled to Taiwan to visit relatives in September 2013. *Id.* ¶ 14, 32.

On September 19, 2013, Retail Store and CDP filed an unlawful detainer complaint against Maria, Wen, and Lin in Santa Clara County Superior Court. The unlawful detainer complaint states that Maria "materially violated the terms of the lease agreement and created and/or allowed the creation of a nuisance upon the premises." FAC at 28.[2] In particular, Maria allowed Lin to reside at CDP without "obtaining the prior written approval" of Retail Store and CDP—a violation

---

[2] The Eviction Notice and the unlawful detainer complaint were attached to the FAC, but have not been attached to the SAC. The SAC refers directly to the contents of the Eviction Notice and it is an essential part of Plaintiffs' complaint. SAC ¶¶ 29, 32. The Eviction Notice was attached to both motions to dismiss. Retail Mot. Ex. 1; Barcelon Mot. at 81. "A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint [or whose contents are essential to a claim] and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (as amended). Therefore, the Court may consider the Eviction Notice without converting the instant motions to dismiss to motions for summary judgment.

In addition, the Court may take judicial notice of publicly filed documents. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a filed complaint as a public record). Therefore, the Court takes judicial notice of the unlawful detainer complaint, which was previously filed in state court. FAC at 28. However, to the extent any of the facts in the unlawful detainer complaint are disputed, the Court does not take judicial notice of those facts. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public record . . . But a court may not take judicial notice of a fact that is subject to reasonable dispute.") (internal quotation marks omitted), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

4

of Maria's rental agreement.  *Id.*  The complaint further states that Maria's "tenancy has been fraught with constant complaints from neighbors who have been terrified by threatening, hostile, bizarre, and alarming behavior." *Id.*

In 2010, for example, Lin "locked [Maria] out of the apartment and angrily abused [CDP] staff when they attempted to intervene." *Id.*  Maria was also given infraction notices from CDP on March 6, 2012; April 24, 2012; June 19, 2012; July 25, 2012; October 23, 2012; and November 30, 2012 because Lin and Maria were "harassing residents, staff and caregivers; knocking on their doors; making unwanted contact; and physically assaulting others." *Id.* at 29 (noting that Maria was served an infraction on October 23, 2012 after she and Lin "kicked at the manager's door, screamed death threats and curses towards the staff.").  The unlawful detainer complaint also produced notes that CDP staff members had received from Maria, which stated, among other things, that "[e]vil fate will befall you soon.  Your parents die and your son die," and that "[y]ou stinky prostitute putting stuff in my garlic bowl.  Almighty will punish you.  Your parents will die.  You are dirty and rotten." *Id.* at 30.  Maria, Wen, and Lin did not respond to the unlawful detainer complaint. *Id.* ¶ 5-25.  Plaintiffs allege that Wen was unable to respond on behalf of Maria and himself due to his visit to Taiwan.  SAC ¶ 33.  On October 17, 2013, the Santa Clara County Sheriff's Office evicted Maria, Wen, and Lin from CDP.

Plaintiffs allege that Defendants have essentially admitted that "all the behavioral outbursts alleged in the [unlawful detainer complaint] were instigated by Lin." *Id.* ¶ 28.  Plaintiffs allege that Defendants' internal documents state that if Lin were not living at the property, Maria would be "an annoyance but like a small fly" and that if CDP could keep Lin away from CDP, Maria would be "saner." *Id.*  However, the Court notes that Lin was previously a co-Plaintiff with Maria and Wen in the instant case, and that the three asserted FHAA and FEHA claims against Defendants.  On August 25, 2016, Lin's case was dismissed with prejudice for failure to prosecute.  ECF No. 99.

After the eviction, at the end of October 2013, Wen contacted In Home Supportive Services ("IHSS") to discuss Maria's care, but was told that IHSS was not authorized to talk with

5

him because Liu, the CDP employee discussed above, was Maria's guardian.  SAC ¶ 35. However, Plaintiffs allege that Liu had fraudulently told IHSS that she was Maria's guardian in order to facilitate the eviction process—allegedly, no guardianship application had ever been filed to make Liu Maria's guardian.  *Id.*

As a result of the eviction, Plaintiffs allege that Wen and Maria have been forced to rent a single room in a house due to their limited income and the loss of subsidized housing.  *Id.* ¶ 36.

**B.    Procedural History**

On October 17, 2014, Maria filed a housing discrimination complaint with the United States Department of Housing and Urban Development ("HUD"), which asserted that she was the subject of discriminatory treatment by CDP staff.  Pursuant to HUD policy, Maria's complaint was forwarded to the California Department of Fair Employment and Housing ("DFEH").  On November 6, 2015, DFEH closed Maria's case after finding that she had presented insufficient evidence of discrimination.

Plaintiffs filed the original complaint in federal court on October 15, 2015, which mirrored the allegations set forth in Maria's HUD complaint.  ECF No. 1.  The original complaint asserted causes of action under the Fair Housing Amendments Act ("FHAA") and Fair Employment and Housing Act ("FEHA").  *Id.*  On April 6, 2016, Retail Store and CDP moved to dismiss the original complaint.  ECF No. 39.  In lieu of opposing this motion, on May 2, 2016, Plaintiffs filed the FAC, which kept the same two causes of action but added Barcelon as a Defendant.  As a result, the Court denied Defendants' motions to dismiss as moot.  ECF No. 53.  On June 17, 2016, Barcelon declined magistrate judge jurisdiction, and on June 21, 2016, the instant action was reassigned to the undersigned judge.  ECF No. 79.

Retail Store and CDP moved to dismiss the FAC on May 13, 2016.  ECF No. 60.  Maria and Wen filed a response on June 20, 2016, and Retail Store and CDP filed a reply on June 29, 2016.  ECF No. 76; ECF No. 81.  Barcelon moved to dismiss the FAC on June 9, 2016.  ECF No. 69. Maria and Wen filed a response on June 21, 2016, and Barcelon filed a reply on June 30, 2016.  ECF No. 78; ECF No. 82.  On August 9, 2016, the Court granted Defendants' motions to

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1    dismiss for three reasons: Maria lacked capacity, Wen did not have standing, and Plaintiffs failed

2    to state a claim under the FHAA or FEHA because they failed to allege that any actions were

3    taken because of a disability.  First Order at 13.[3]

4          On September 8, 2016, Plaintiffs filed a Second Amended Complaint ("SAC").  ECF No.

5    104.  The SAC alleges violation of the FHAA and FEHA, but significantly changes the factual

6    allegations supporting those claims.  *Id.*

7          On September 27, 2016, Retail Store and Barcelon each brought a Motion to Dismiss the

8    Second Amended Complaint.  ECF No. 111 ("Retail Store Mot."); ECF No. 112 ("Barcelon

9    Mot.").  On October 11, 2016, Plaintiffs filed a single opposition to both motions.  ECF No. 114

10   ("Opp'n").  On October 18, 2016, Retail Store and Barcelon each filed a reply.  ECF No. 116

11   ("Retail Store Reply"); ECF No. 15 ("Barcelon Reply").

12   **II.     LEGAL STANDARD**

13          **A.     Motion to Dismiss**

14          Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

15   action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

16   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

17   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

18   defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

19   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

20   unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For

21   purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the

22   complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

23   party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

24          Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely

25   _____

26   [3] Although this case was initially filed *pro se*, Plaintiffs obtained counsel who appeared in the case
     on behalf of Plaintiffs on June 3, 2016.  ECF Nos. 62, 63.  Thus, Plaintiffs were represented by

27   counsel for the responses to Retail Stores' and Barcelon's motions to dismiss the FAC.  Plaintiffs
     continue to be represented by counsel.

28                                                                              7
     Case No. 15-CV-04768-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir. 1995)).

### B.    Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted).  Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.    DISCUSSION

The arguments in Defendants' motions to dismiss are substantially identical to one another. First, Defendants argue that Maria lacks capacity to sue.  Next, Defendants contend that Wen does not have standing to sue.  Finally, Defendants argue that the SAC fails to allege facts sufficient to state a claim under the FHAA, FEHA, and California's privacy laws.  The Court addresses these arguments in turn.

### A.    Maria's Capacity to Sue

Federal Rule of Civil Procedure 17 "governs the capacity of parties to sue or be sued in federal court." *Bennett v. Cty. of Riverside*, 2014 WL 4162564, *2 (C.D. Cal. Aug. 20, 2014). Specifically, under Rule 17(b)(1), the "[c]apacity to sue or be sued is determined . . . by the law of the individual's domicile." Fed. R. Civ. P. 17(b)(1).  Because Maria is domiciled in California, California law applies.

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1      Under California law, "[t]he test for incompetence . . . is whether the party has the capacity

2    to understand the nature or consequences of the proceeding, and is able to assist counsel in

3    preparation of the case." *In re Jessica G.*, 93 Cal. App. 4th 1180, 1186 (2001).  If a party is found

4    to be incompetent based on this test, then that party may only appear in state court through "a

5    guardian or conservator of the estate or by a guardian ad litem."  Cal. Civ. Proc. Code § 372(a)(1).

6    Similarly, an incompetent party may only bring suit in federal court through a duly appointed

7    representative, which is defined in the Federal Rules of Civil Procedure as a "general guardian," a

8    "committee," a "conservator," or a "like fiduciary."  Fed. R. Civ. P. 17(c)(1).  An "incompetent

9    person who *does not* have a duly appointed representative may sue [in federal court] by a next

10   friend or by a guardian ad litem."  Fed. R. Civ. P. 17(c)(2) (emphasis added).  Federal courts may,

11   in their broad discretion, appoint a guardian ad litem for an incompetent party.  *Davis v. Walker*,

12   745 F.3d 1303, 1310 (9th Cir. 2014).

13       The parties here do not dispute that Maria is incompetent under the test set forth in *In re

14   *Jessica G.*  *See* Opp'n at 7–8; Retail Reply at 6; Barcelon Reply at 6.  Thus, the issue becomes

15   whether Maria has a guardian or conservator who can sue on her behalf.  Previously, the Court

16   dismissed Maria's cause of action because Maria conceded in the FAC that Liu, an employee of

17   CDP, had been appointed as Maria's guardian.  First Order at 6.  However, the SAC alleges that

18   no guardian was ever appointed for Maria.  *See* SAC ¶ 35 ("No guardianship application was ever

19   filed.").  Defendants do not argue that such an application was ever filed or that anyone was ever

20   appointed as Maria's guardian.  Thus, no guardian was ever appointed for Maria.

21       The Court next turns to whether Wen may bring this suit on behalf of Maria.  Plaintiffs

22   attach to the SAC a "Power of Attorney (with Durable Provision)."  SAC Ex. 1.  The power of

23   attorney provides that Wen may act as "attorney-in-fact" on behalf of Maria, which includes

24   powers involving "Claims and litigation" and "All other matters."  *Id.*  The power of attorney

25   includes a "Durable provision," which states that "the power of attorney shall not be affected by

26   the subsequent disability or incompetence of the Grantor."  *Id.*

27       Plaintiffs argue that this power of attorney provides Wen the ability to sue on Maria's

28

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

behalf.  Opp'n at 7–8.  In response, Defendants argue that a power of attorney is insufficient under California Civil Procedure Code § 372(a)(1), which requires an incompetent person to appear by a "guardian or conservator of the estate or a guardian ad litem," and under Federal Rule of Civil Procedure 17(c)(1), which requires a "duly appointed" representative.  Barcelon Reply at 2; Retail Store Reply at 2–3.

The Court agrees with Defendants that a power of attorney does not confer the ability to sue on behalf of an incompetent person.  As described above, § 372(a)(1) explicitly states that only a guardian, conservator, or guardian ad litem may appear on behalf of an incompetent person.  That requirement is not affected by a power of attorney.  Although a power of attorney may grant a person the authority to bring suit, such a grant of power is "subject to conditions of . . . law that exist outside this chapter."  *Drake v. Superior Court*, 21 Cal. App. 4th 1826, 1831 (1994).  The California Court of Appeal has interpreted this statement to mean that a person with a power of attorney is still "subject to . . . the Code of Civil Procedure and local court rules.  Thus, the [person holding the power of attorney for an incompetent person] may bring an action on behalf of his or her principal only as a guardian ad litem, the appointment of which is accomplished by order of the court."  *In re Marriage of Caballero*, 27 Cal. App. 4th 1139, 1152 (1994) (as amended).

Additionally, under California law, a power of attorney is used to *nominate* a conservator or guardian to represent a person or an estate, and does not itself confer guardianship or conservatorship status.  Cal. Prob. Code § 4126 ("A principal may nominate, by a durable power of attorney, a conservator of the person or estate or both, or a guardian of the person or estate or both.").  Plaintiffs argue that the broad scope of powers provided in the power of attorney, under Cal. Prob. Code § 4263, "impliedly sweeps in all powers authorized by the statute including but not limited to [p]owers of guardians and conservators."  *Id.*  However, Plaintiffs ignore that § 4263 only "sweeps in" other powers where that power is "incorporate[d] by reference to another statute."  *Id.*  The power of attorney here does not contain such a reference to the guardianship or conservator statutes.  SAC Ex. 1.

Therefore, Maria still does not have a valid guardian, conservator, or guardian ad litem to

10

United States District Court
Northern District of California

bring the instant suit on her behalf.  The Court notes that on August 9, 2016, the Court dismissed the FAC because the guardian Maria had identified in the FAC had not brought the suit on Maria's behalf.  *See* First Order at 96 ("Thus, because Maria does not have legal capacity to sue and because [Liu] has not brought suit on Maria's behalf, Maria may not proceed as a Plaintiff in the instant case.").  The Court dismissed without prejudice to provide Plaintiffs the opportunity to resolve the issue of Maria's guardianship.  However, on September 14, 2016, even after filing the SAC, Plaintiffs had still not resolved the issue of Maria's guardianship.  *See* ECF No. 106 at 2 (joint case management statement in which Plaintiffs note that, despite the allegations in the SAC, Liu was Maria's guardian).  The Court ordered the parties to produce all documents to one another related to the guardianship issue by September 21, 2016.  ECF No. 109.  However, since that time, Plaintiffs have taken no action to appoint a guardian for Maria and have not provided any evidence concerning whether Liu was ever Maria's guardian.  Plaintiffs' repeated failure to resolve the issue of Maria's guardianship warrants her dismissal from the case.  However, the Court provides Plaintiffs one last opportunity to obtain a guardian for Maria.  Within 21 days of this order, Plaintiffs must file a motion to appoint a guardian ad litem, or Maria will be dismissed from the case with prejudice.

### B.    Wen's Standing to Sue Under the FHAA and FEHA

The Court next addresses whether the other plaintiff, Wen Lee, has standing to sue under the FHAA and FEHA.  In *Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999), the Ninth Circuit "held that claims brought under the Fair Housing [Amendments] Act are to be judged under a very liberal standing requirement."  *Id.* at 1049.  "Unlike actions brought under other provisions of civil rights law, under the FHA[A] the plaintiff need not allege that he or she was a victim of discrimination."  *Id.* at 1049–50.  "Rather, the sole requirement for standing under the Act is the Article III minima of injury in fact."  *Id.* at 1050 (internal quotation marks omitted).  "To meet this requirement, a plaintiff [must] allege that as a result of the defendant's discriminatory conduct he has suffered a distinct and palpable injury."  *Id.* (internal quotation marks and alteration omitted).

The same standing standard applies to Wen's claims under the FEHA, as the Ninth Circuit

11

has determined that "the same standards [apply] to FHA[A] and FEHA claims." *Walker v. City of Lakewood*, 272 F.3d 1114, 1131 n.8 (9th Cir. 2001) ("Because the [plaintiff] can maintain an action under [the FHAA], we conclude that [the plaintiff] also can bring a [] claim under the FEHA."); *see also Huynh v. Harasz*, 2016 WL 2757219, at *21 (N.D. Cal. May 12, 2016) (holding that "a viable FHAA claim is also a viable FEHA claim").

As this Court noted in its prior order dismissing the FAC, there is some uncertainty as to whether *Harris*, which relied upon the United States Supreme Court's decision in *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979), remains good law in light of *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011). In *Thompson*, the United States Supreme Court appeared to refer to part of its standing analysis in *Gladstone* as "dictum [which] was ill-considered." *Id.* at 176. Post-*Thompson*, federal courts are split as to whether a plaintiff may establish FHAA standing by simply meeting the minimum requirements set forth under Article III, or whether a statutory standing zone-of-interests test needs to be applied. *Compare City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1277 (11th Cir. 2015) (holding that Gladstone still applies), with *Cty. of Cook v. Wells Fargo & Co.*, 115 F. Supp. 3d 909, 917–18 (N.D. Ill. 2015) (adopting more restrictive standing requirements after Thompson). The Ninth Circuit has not yet spoken on this issue, nor have the parties briefed it.

Regardless, the Court need not resolve this issue because for each cause of action Plaintiffs allege, Wen either satisfies both Article III and statutory standing or satisfies neither. Plaintiffs bring claims based on two sets of events in the SAC. First, Plaintiffs bring claims for Housing Discrimination Based on a Hostile Living Environment and Housing Discrimination Based on Discriminatory Statements Made in Connection with the Sale or Rental of a Dwelling under the FHAA and FEHA. These claims are based on the allegations that Liu and Ms. Ma verbally harassed Maria during Maria's tenancy from 2004 to 2011. Second, Plaintiffs bring a claim for Housing Discrimination Based on the Eviction of Maria and Wen under both the FHAA and FEHA. The Court addresses Wen's standing first for the causes of actions arising from Liu's and Ms. Ma's verbal harassment, and then addresses Wen's standing for the claim arising from

12

United States District Court
Northern District of California

1    Maria's and Wen's eviction.

2         First, Wen clearly does not have standing to bring suit for any harassment suffered by

3    Maria from 2004 to 2011 because there is no allegation that he lived at the apartment, or even

4    visited, during that time frame.  Therefore, he could not have suffered a "distinct and palpable

5    injury" based on Liu's and Ms. Ma's alleged abuse of Maria.  Even if Wen was a resident during

6    that time, he would not have standing because "simply witnessing discrimination [does not]

7    constitute an injury-in-fact sufficient for Article III standing."  *Sturm v. Davlyn Invs., Inc.*, 2013

8    WL 8604760, at *3 (C.D. Cal. Nov. 6, 2013).  The SAC contains no allegation that Wen ever

9    personally suffered any discrimination while living at CDP.  Therefore, Wen does not have

10   standing to sue based on the verbal harassment Maria allegedly suffered at CDP, that is, for the

11   claims for Housing Discrimination Based on a Hostile Living Environment or Housing

12   Discrimination Based on Discriminatory Statements Made in Connection with the Sale or Rental

13   of a Dwelling under the FHAA and FEHA.

14        Second, Wen has satisfied standing with respect to the claims for Housing Discrimination

15   Based on Maria's and Wen's Eviction.  The SAC alleges that Wen lived in Maria's apartment on a

16   permanent basis as a "live-in caretaker."  SAC ¶ 14.  The Eviction Notice issued to Maria, Wen,

17   and Lin also lists Wen as a "live-in attendant," while it lists Lin as an "unauthorized resident."

18   FAC at 22.  Wen, therefore, was evicted from CDP, has an unlawful detainer judgment entered

19   against him, and now "rent[s] one room in a house" with his mother due to the loss of Maria's

20   subsidized housing.  SAC ¶ 36.  Thus, if Maria was evicted for a discriminatory reason, Wen was

21   also evicted and was thereby injured by the same discriminatory housing practice.

22        Wen's situation is comparable to *Mountain Side Mobile Estates Partnership v. Secretary of*

23   *Housing and Urban Development*, 56 F.3d 1243 (10th Cir. 1995).  In *Mountain Side*, plaintiff

24   resided permanently with his girlfriend and his girlfriend's three children.  The family was

25   subsequently evicted for violating a mobile home park rule which prohibited families of more than

26   three people from living in the mobile home park.  *Id.* at 1247.  Plaintiff claimed that this rule

27   constituted a discriminatory housing practice.  *Id.* at 1249.  The Tenth Circuit held that plaintiff

28

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

had shown that he had been injured as a result of this housing practice because plaintiff resided permanently in the mobile home park, and plaintiff was injured when he was evicted from the mobile home park.  Similarly, Plaintiffs have alleged that Wen resided permanently in Maria's apartment and was injured by the eviction sufficiently to satisfy Article III.

Even if the Court were to apply a statutory standing test as was described in *Thompson*, Wen would have standing to sue Defendants.  In *Thompson*, the United States Supreme Court held that whether someone is a "person aggrieved" with a cause of action should be evaluated based on whether the plaintiff "falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint."  *Thompson*, 562 U.S. at 177 (internal quotation marks and citations omitted).  Thus, the United States Supreme Court stated that lower courts must allow suits from plaintiffs with interests "arguably sought to be protected by the statute," while excluding those people with interests "unrelated to the statutory prohibitions in Title VII."  *Id.* at 178.

The United States Supreme Court in *Thompson* then applied the zone-of-interests test and found that the plaintiff satisfied the statutory standing test with respect to Title VII.  *Id.*  It did not matter that the plaintiff did not suffer discrimination directly because (1) the plaintiff was an employee of the defendant company ("and the purpose of Title VII is to protect employees from their employers' unlawful actions"), and (2) the plaintiff was not an accidental victim of retaliation, but rather, the employer had sought to hurt the plaintiff by discriminating against the plaintiff's fiancée.  *Id.*  Under these circumstances, Plaintiff was "well within the zone of interests sought to be protected by Title VII."  *Id.*

Similarly here, Wen alleges that he was a resident of CDP as Maria's live-in attendant, that Defendants evicted Maria based on a discriminatory purpose, and that, as a result, Wen was also evicted.  The FHAA's purpose is to protect residents from landlords in the same way that Title VII seeks to protect employees from their employers.  Specifically, § 3604(f)(1) states that it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter."  A cause of

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1   action is provided to an "aggrieved person," that is, someone who is "injured by a discriminatory

2   housing practice."  42 U.S.C. § 3602(i)(1).  If Maria was evicted for discriminatory reasons, Wen

3   was also evicted for these reasons, and was "injured by a discriminatory housing practice."  *Id.*;

4   *compare Cty. of Cook*, 115 F. Supp. 3d at 918 (finding no standing under § 3604 because "Cook

5   County is not a person to whom a 'dwelling' can be made unavailable, for it does not 'dwell'

6   anywhere").  Additionally, although Wen was not necessarily the intended "victim" of the alleged

7   discrimination like in *Thompson*, Defendants certainly intended to evict Wen alongside Maria, as

8   his name was on the Eviction Notice.  Therefore, Wen falls within the zone of interests of the

9   FHAA with respect to Maria's claims concerning her eviction.

10         Accordingly, Wen has standing to sue with respect to the claims for Housing

11   Discrimination Based on Wen and Maria's Eviction under the FHAA and FEHA, but has no

12   standing to sue for the claims based on the alleged verbal harassment of Maria.  Therefore, the

13   Court GRANTS Defendants' motions to dismiss against Wen with prejudice on the FHAA and

14   FEHA claims for Housing Discrimination Based on a Hostile Living Environment and Housing

15   Discrimination Based on Discriminatory Statements Made in Connection with the Sale or Rental

16   of a Dwelling.

17         The Court denies leave to amend because in this Court's prior order in the instant suit

18   dismissing the FAC, the Court held that Wen had no standing to sue under the FHAA or FEHA

19   because witnessing Maria's alleged harassment did not create a sufficient injury and the complaint

20   contained no allegations that Wen was treated in a discriminatory manner.  The Court specified

21   that if this deficiency was not cured, Wen's claims would be dismissed with prejudice.  As noted

22   above, with respect to the claims based on the verbal harassment of Maria, Plaintiffs have been

23   unable to cure the deficiencies in Wen's standing.  Therefore, the Court concludes that any further

24   amendment of the complaint would be futile with respect to Wen's standing as to the claims based

25   on the verbal harassment of Maria.

26         **C.     Causes of Action**

27         The SAC involves claims under the FHAA and FEHA.  Additionally, Plaintiffs' raise for

28

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

the first time in their opposition brief a claim involving California tenant privacy laws.  The Court first addresses the FHAA, then addresses the FEHA, and finally discusses California privacy laws. Plaintiffs' cause of action under the FHAA has three parts: (1) Housing Discrimination Based on Wen and Maria's Eviction Under FHAA, 42 U.S.C. § 3604(f)(1); (2) Housing Discrimination Based on Hostile Living Environment Under the FHAA, 42 U.S.C. § 3604(f)(2); and (3) Housing Discrimination Based on Discriminatory Statements Made in Connection with the Sale or Rental of a Dwelling Under the FHAA, 42 U.S.C. § 3604(c).

Plaintiffs' cause of action under the FEHA has four parts: (1) Housing Discrimination Based on Eviction Under FEHA, Cal. Gov't Code § 12955(a), (k); (2) Housing Discrimination Based on Hostile Living Environment Under FEHA, Cal. Gov't Code § 12927(c)(1); (3) Housing Discrimination Based on Discriminatory Statements Made In Connection with Rental or Sale of a Housing Accommodation Under FEHA, Cal. Gov't Code § 12955(c); and (4) Retaliation Under FEHA, Cal. Gov't Code § 12955(f).

Finally, Plaintiffs, for the first time in their opposition brief, allege a cause of action under California privacy laws based on Maria's personal information.

### 1.    First Cause of Action – Fair Housing Amendment Act ("FHAA")

Under the first cause of action, Plaintiffs allege the following claims:  (1) Housing Discrimination Based on Wen and Maria's Eviction Under FHAA, 42 U.S.C. § 3604(f)(1); (2) Housing Discrimination Based on Hostile Living Environment Under the FHAA, 42 U.S.C. § 3604(f)(2); and (3) Housing Discrimination Based on Discriminatory Statements Made in Connection with the Sale or Rental of a Dwelling Under the FHAA, 42 U.S.C. § 3604(c).

As noted above, on the facts in the SAC, Wen has standing to bring an FHAA claim for discriminatory eviction, but not for hostile living environment or discriminatory statements made in connection with the sale or rental of a dwelling based on the alleged verbal harassment of Maria. On the other hand, Maria has standing to allege an FHAA claim for discriminatory eviction, hostile living environment, and discriminatory statements made in connection with the sale or rental of a dwelling.  However, Maria must obtain a guardian ad litem, and the guardian ad litem must bring

16

the FHAA claim on Maria's behalf.  Therefore, the Court first addresses Wen's and Maria's FHAA claim for discriminatory eviction, then addresses Maria's FHAA claim for hostile living environment and discriminatory statements made in connection with the sale or rental of a dwelling.

### a.   Housing Discrimination Based on Wen and Maria's Eviction Under FHAA, 42 U.S.C. § 3604(f)(1)

Plaintiffs allege that Defendants discriminated against Maria by evicting her based on her disability-related actions and her association with her mentally disabled daughter.  Section 3604 of the FHAA makes the following unlawful:

> To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter *because of* a handicap of—
> (A) that buyer or renter;
> (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or
> (C) any person associated with that buyer or renter.

42 U.S.C. 3604(f)(1) (emphasis added); *Housing Rights Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1192 (C.D. Cal. 2004) (holding that the reason for the allegedly discriminatory action must be the protected status).  As noted in the statutory provision reproduced above, the FHAA provides a claim whether the "handicap" is suffered by the renter or buyer, in this case Maria, or a person "associated with that buyer or renter," such as family members or friends.  42 U.S.C. § 3604(f)(1).  At the motion to dismiss stage, Plaintiff must allege (1) that an adverse action making the apartment unavailable occurred, (2) that the action was taken against someone with a "handicap," and (3) "that the adverse action was taken *because of* a [handicap]."  *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221–25 (11th Cir. 2016).[4]

Here, Plaintiffs allege that Maria was evicted "based largely on her disability related behavior associated with her dementia and other mental health disabilities of which defendants were well aware and her association with her mentally ill daughter Lin Kou Lee."  SAC ¶ 29.

As an initial matter, eviction is a sufficient "adverse action" to state a claim under the

---

[4] The terms "handicap" and "disability" are interchangeable.  However, when discussing the FHAA, the Court uses the term "handicap" and in all other places uses the term disability.

17

FHAA because "[d]iscriminatory conduct encompasses threats of eviction or efforts to evict a tenant because of a disability." *Johnson v. Macy*, 145 F. Supp. 3d 907, 915 (C.D. Cal. 2015) (citing 24 C.F.R. § 100.60(b)(5) (stating that a landlord is prohibited from "[e]victing tenants because of their . . . handicap[s].")).

Thus, because the first element identified above has been satisfied, to state a claim based on the eviction, Plaintiffs must also allege facts to satisfy the latter two elements, namely, that (1) Maria or someone associated with her, such as her daughter Lin, suffered a "handicap" within the meaning of the FHAA, and (2) that the eviction occurred because of the "handicap." The Court addresses each element in turn.

### i.    "Handicap"

An individual has a "handicap" under the FHAA if he or she has "(1) a physical or mental impairment which substantially limits one or more of [his or her] major life activities, (2) a record of such impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h). This Court has previously held that, in the context of the Americans with Disabilities Act ("ADA"), which uses a definition of "disability" that is identical to the FHAA's definition of "handicap," a plaintiff's disability must be pled "with some factual specificity." *Bresaz v. Cty. of Santa Clara*, 136 F. Supp. 3d 1125, 1135 (N.D. Cal. 2015); *see also Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147–49 (9th Cir. 2003) (finding that ADA case law is applicable to an analysis under the FHAA). Plaintiffs' complaint refers to three distinct potential "handicaps": Maria's dementia, Maria's "other mental health disabilities," and Lin's alleged "mental[] ill[ness]." SAC ¶ 29. The Court discusses each alleged "handicap" in turn.

First, Maria's dementia is a "handicap" within the meaning of the FHAA. *See Herriot v. Channing House*, 2009 WL 225418, at *3 (N.D. Cal. Jan. 29, 2009) (finding the plaintiff to be handicapped based partly because she suffered from dementia). As a result of this dementia, Plaintiffs allege that, starting in 2012, Maria "was incapable [of] taking care of her own financial and legal affairs" and that "[s]he needs assistance in managing her daily activities and her health and safety matters." SAC ¶ 27. Thus, Plaintiffs have alleged that Maria suffered from dementia

United States District Court
Northern District of California

and that her dementia created a "mental impairment which substantially limits . . . [her] major life activities." 42 U.S.C. § 3204(h)(1). Accordingly, the Court finds that Plaintiffs have sufficiently alleged that, as of 2012, Maria had a "handicap" within the meaning of the FHAA.

Second, Plaintiffs allege that Maria suffered "other mental health disabilities." SAC ¶ 29. However, Plaintiffs do not point to any specific mental illness that Maria suffered other than dementia. Additionally, Plaintiffs solely allege that these other mental health disabilities caused Maria "difficulty interacting with her neighbors" and caused her to think neighbors had stolen her suitcase and clothing, but does not allege that these alleged disabilities caused "mental impairment which substantially limits . . . [Maria's] major life activities" as required by the FHAA. 42 U.S.C. § 3204(h)(1). At the very least, to state a claim, Plaintiffs need to "identify [Maria's] handicap" in the complaint. *DeRock v. Boise City*, 2015 WL 1736488, at *2 (D. Idaho Apr. 16, 2015). Accordingly, because Plaintiffs have failed to identify these "other mental disabilities," these other disabilities cannot be the basis of an FHAA claim.

Third, Plaintiffs allege that Lin, Maria's daughter, suffered "mental health disabilities." SAC ¶ 14. Plaintiffs' sole allegation regarding these disabilities is that Lin was unable to care for her parents due to these disabilities. *Id.* As with Maria's "other mental health disabilities," Plaintiffs fail to identify Lin's mental health disability or to allege that these disabilities substantially limited her major life activities such that they rise to the level of a "handicap" within the meaning of the FHAA. *DeRock*, 2015 WL 1736488 at *2 (noting that the plaintiff must at least identify a handicap to state a claim under the FHAA). Therefore, Lin's mental health disability cannot be the basis for an FHAA claim.

As discussed above, Plaintiffs allege that Maria's eviction occurred based on three grounds: her dementia, her other mental health disabilities, and Lin's mental illness. Under the FHAA, Plaintiffs can only state a claim for Housing Discrimination Based on Maria's and Wen's Eviction if that eviction occurred "because of a handicap of" Maria or because of a handicap of "any person associated with [Maria]." 42 U.S.C. § 3604(f)(1). Thus, because Plaintiffs have not adequately alleged Maria's other mental health disabilities and Lin's mental health disabilities, the Court

19

United States District Court
Northern District of California

United States District Court
Northern District of California

GRANTS Defendants' motions to dismiss to the extent the claim for Housing Discrimination Based on Wen and Maria's Eviction relies on these alleged "handicaps."  The Court previously dismissed the FAC partly because Plaintiffs had failed to show that any discrimination had occurred "because of a handicap."  Similarly here, with respect to Maria's "other mental health disabilities" and Lin's "mental health disabilities," Plaintiffs have failed to sufficiently plead that the eviction occurred because of a "handicap."  Therefore, the Court does not provide leave to amend.

The Court additionally notes that making the dismissal without leave to amend with respect to Lin's alleged "mental health disabilities" is especially deserved.  In the SAC, Plaintiffs allege that Maria has a cause of action based on Lin's supposed mental health disabilities, and then two paragraphs later, alleges that Defendants should have taken steps to ban Lin, Maria's daughter, from visiting her at CDP.  Thus, Plaintiffs allege that taking an action against Lin would be invidious discrimination, but that Defendants should have committed such discrimination if it favored Maria.  Additionally, Lin was previously a co-plaintiff with Maria and Wen in the instant suit.  In two successive complaints, Maria, Wen, and Lin sued Defendants for discrimination for evicting all three of them, and now Plaintiffs have completely changed their position to state that Defendants should have banned Lin entirely from CDP.  Thus, the Court does not provide yet another opportunity to Plaintiffs to allege Lin's and Maria's other mental health disabilities when it is apparent that any further amendment on the issue would be futile.

The Court next turns to discuss whether the only disability Plaintiffs have adequately alleged, Maria's dementia, was the reason why Maria was evicted.

### ii.    Eviction "Because Of a Handicap"

In order to state a claim under the FHAA based on Maria's eviction, Plaintiffs must allege that Defendants evicted Maria "because of" her handicap, her dementia.  *Hunt*, 814 F.3d at 1221–25.  Plaintiffs allege that Maria was evicted "[d]espite [Defendants] knowing that it was really her daughter who was causing the disruptions" and "based largely on her disability related behavior associated with her dementia and other mental health disabilities of which defendants were well

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

aware and her association with her mentally ill daughter Lin Kou Lee." SAC ¶ 29. As discussed in the prior section, Plaintiffs' arguments that Maria was evicted because of Maria's "other mental disabilities" or Lin's "mental health disabilities" does not provide a cause of action under the FHAA. Therefore, the sole remaining question is whether Plaintiffs have a cause of action due to discrimination based on Maria's "disability related behavior associated with her dementia." *Id.*

The SAC does not allege the specific behavior that was associated with Maria's dementia, but refers to the Eviction Notice that was sent to Maria, Wen, and Lin. As noted in the background section above, the Court may consider the Eviction Notice because it is incorporated by reference in the SAC. *See Parrino*, 146 F.3d at 705 ("A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"). Defendants have also attached the eviction notice to their motions to dismiss. Barcelon Mot. Ex. A; Retail Mot. Ex. B.

The Eviction Notice states that Defendants evicted Maria, Lin, and Wen due to Maria's "threatening, hostile, bizarre, and alarming behavior." FAC at 26. Maria was given infraction notices from CDP on March 6, 2012; April 24, 2012; June 19, 2012; July 25, 2012; October 23, 2012; and November 30, 2012 because Lin and Maria were "harassing residents, staff and caregivers; knocking on their doors; making unwanted contact; and physically assaulting others." *Id.* at 29 (noting that Maria was served an infraction on October 23, 2012 after she and Lin "kicked at the manager's door, screamed death threats and curses towards the staff"). The Eviction Notice also produced notes that CDP staff members had received from Maria in 2013, after Maria's 2012 diagnosis for dementia, which stated, among other things, that "[e]vil fate will befall you soon. Your parents die and your son die," and that "[y]ou stinky prostitute putting stuff in my garlic bowl. Almighty will punish you. Your parents will die. You are dirty and rotten." *Id.* at 30.

As mentioned above, Plaintiffs have alleged that the behavior cited in the Eviction Notice was related to Maria's dementia. The Ninth Circuit has held, in the context of ADA employment

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1   cases, that "conduct resulting from a disability is considered to be part of the disability."

2   *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001); *Giebeler*, 343 F.3d at

3   1147 (finding that ADA case law is applicable to an analysis under the FHAA).  In *Humphrey*, an

4   employee was fired for being late to work and due to multiple unscheduled absences from work

5   that were caused by the employee's obsessive-compulsive disorder.  *Humphrey*, 239 F.3d at 1132–

6   33.  The Ninth Circuit held that the employer could be held liable under the ADA for firing that

7   employee even though a healthy person could have been fired for the same actions.  *Id.* at 1139.

8          Similarly, here, Plaintiffs have alleged that Defendants (1) knew that Maria had dementia,

9   (2) that they evicted Maria because of her behavior, and (3) that the behavior was related to

10   Maria's dementia.  Given the equivalency of disabilities and disability-caused behavior created by

11   *Humphrey*, these allegations are sufficient to state a claim that Maria was evicted because of her

12   disability.  Although the parties may later dispute whether Maria's dementia actually caused her

13   actions, that causation has been adequately pled for the purposes of a motion to dismiss.  *See also*

14   *Gambini v. Total Renal Care, Inc*., 486 F.3d 1087, 1093 (9th Cir. 2007) (finding that trial court

15   should have instructed jury that liability could be incurred based on disability-related conduct

16   "where an employee demonstrates a causal link between the disability-produced conduct and the

17   termination").

18          In response, Defendants argue that their actions fall into a safe harbor created by the

19   FHAA.  Under 42 U.S.C. § 3604(f)(9), there is no liability for discrimination based on disability

20   where a tenant's actions "constitute a direct threat to the health or safety of other individuals or

21   whose tenancy would result in substantial physical damage to the property of others."  However, to

22   invoke this safe harbor, courts have required the landlords to demonstrate that "no 'reasonable

23   accommodation' w[ould] eliminate or acceptably minimize any risk" to other individuals created

24   by the disabled tenant.  *Roe v. Hous. Auth. of City of Boulder*, 909 F. Supp. 814, 822–233 (D.

25   Colo. 1995) ("*Boulder*") (holding that the landlord needed to show that no reasonable

26   accommodation would have eliminated or acceptably minimized the risk of a tenant who had

27   verbally abused, and even punched, other tenants); *see also Roe v. Sugar River Mills Assoc.*, 820 F.

28
Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1    Supp. 636, 640 (D.N.H. 1993) (applying the same standard as *Boulder*).

2         Accordingly, to invoke the safe harbor, Defendants have the burden of showing that Maria

3    was a direct threat to others and of showing that no reasonable accommodation would eliminate or

4    acceptably minimize the risk.  Here, Defendants point to some facts in the eviction notice that may

5    indicate that Maria posed a threat: Maria screamed at people, kicked at doors, and "made unwanted

6    contact."  FAC at 22–23.  However, Defendants have not made a showing that no reasonable

7    accommodations would have eliminated the threat or minimized the risk.  Therefore, Defendants

8    have not satisfied their burden to invoke the safe harbor.  Additionally, further factual development

9    is likely necessary to make such a finding.  Indeed, virtually all cases determining whether the safe

10   harbor applies, including the cases cited by Defendants, have considered the issue at the summary

11   judgment stage or after a trial, not on a motion to dismiss.  *Boulder*, 909 F. Supp. 814 (deciding

12   whether § 3604(f)(9) precludes relief at summary judgment stage); *Sugar River Mills*, 820 F. Supp.

13   636 (same); *Wirtz Realty Corp. v. Freund*, 721 N.E.2d 589, 596–98 (Ill. App. 1999), *appeal denied*

14   *without opinion*, 729 N.E.2d 505 (Ill. 2000) (same); *Arnold Murray Construction v. Hicks*, 621

15   N.W.2d 171, 174 (S.D. 2001) (after bench trial); *see also Thomas v. Hous. Auth. of Cty. of L.A.*,

16   2005 WL 6136440, at *8 (C.D. Cal. June 3, 2005) (determining that the § 3604(f)(9) issue could

17   not be resolved at the motion to dismiss stage).

18        Thus, because Maria has alleged that she was evicted based on behavior related to her

19   dementia, the FHAA claim based on her eviction survives Defendants' motions to dismiss.

20   Therefore, the Court DENIES Defendants' motions to dismiss as to the FHAA claim for allegedly

21   discriminatory eviction.  Additionally, in the above section discussing Maria's "other mental

22   health disabilities" and Lin's "mental health disabilities," the Court granted Defendants' motions

23   to dismiss without leave to amend as to the FHAA claim for discriminatory eviction based on

24   those insufficiently pled "handicaps."

25        The Court next turns to whether Plaintiffs have stated a claim based on the verbal

26   harassment Maria allegedly suffered.  Plaintiffs bring two causes of action under the FHAA based

27   on this verbal abuse, Housing Discrimination Based on Hostile Living Environment Under the

28

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

FHAA, 42 U.S.C. § 3604(f)(2), and Housing Discrimination Based on Discriminatory Statements Made in Connection with the Sale or Rental of a Dwelling Under the FHAA, 42 U.S.C. § 3604(c). As discussed above, only Maria (if she has a guardian), not Wen, has standing to bring these claims.

### b.    Housing Discrimination Based on Hostile Living Environment Under the FHAA, 42 U.S.C. § 3604(f)(2)

Plaintiffs argue that they have stated a claim under § 3604(f)(2) based on Shuling Liu's alleged harassment of Maria.  Section 3604(f)(2) of the FHAA makes the following unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
> (A) that person; or
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> (C) any person associated with that person.

42 U.S.C. § 3604(f)(2).  Thus, the FHAA "guarantees [a tenant's] right to equal treatment once [the tenant has] become [a] resident[] of that housing."  *Hous. Rights Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1192 (C.D. Cal. 2004).  As with claims under § 3604(f)(1), the discrimination must occur "because of a handicap."  42 U.S.C. § 3604(f)(2); *see also Sterling*, 404 F. Supp. 2d at 1191–92 (requiring evidence of intentional discrimination on summary judgment).

Courts have construed this subsection of the FHAA as prohibiting "the creation of a 'hostile environment' by individuals who have control or authority over the 'terms, conditions, or privileges of sale or rental of a dwelling.'"  *Francis v. Kings Park Manor, Inc.*, 91 F. Supp. 3d 420, 428 (E.D.N.Y. 2015); *see also Sterling*, 404 F. Supp. 2d at 1192 ("[T]he aforementioned events created a hostile environment that, in turn, subjected him to different terms, conditions and privileges.").  To adequately allege a hostile environment claim, a plaintiff must state facts showing that (1) the plaintiff was subjected to "discriminatory conduct", and (2) "that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's [housing] and create an abusive [living] environment."  *See Ellison v. Brady*, 924 F.2d 872, 875–76 (9th Cir. 1991) (reciting elements of hostile work environment claim due to sexual discrimination).

24

1    Plaintiffs argue that Maria was discriminated against in the "terms, conditions, or

2    privileges . . . of the services or facilities" based on the comments made by Shuling Liu to Maria at

3    CDP.  Specifically, Plaintiffs allege that Liu called Maria "psycho" from 2004 until Wen arrived in

4    2011 and, when Maria thought people were stealing from her, taunted her by stating "let's go to

5    Maria's home to steal, shall we?"  SAC  ¶¶  18–21.  Additionally, Plaintiffs allege that one

6    neighbor, Ms. Ma, called her psycho at Liu's request, and that in 2008, when Maria asked Ms. Ma

7    who told Ms. Ma that Maria had a mental illness, Ms. Ma responded "everyone in the building

8    knows."  *Id.* ¶¶ 19.

9    Plaintiffs' contention lacks merit for two reasons.  First, the complaint alleges that the

10    verbal abuse occurred from 2004 to 2011.  However, according to the complaint, Maria was not

11    diagnosed with dementia until 2012.  As discussed above, Plaintiffs have inadequately alleged

12    Maria's "other mental health disabilities" that allegedly existed in the 2004 to 2011 period.

13    Therefore, Plaintiffs have failed to allege that Defendants or their agents acted "because of" a

14    mental health disability that is adequately alleged under the FHAA.

15    Second, Plaintiffs allege that the verbal harassment occurred, at most, from 2004 to 2011.

16    SAC ¶ 18.  However, Plaintiffs did not initiate administrative proceedings until October 17, 2014,

17    ECF No. 52 at 35, and did not file the instant case until October 15, 2016, ECF No. 1.  Thus, there

18    was an approximately three-year gap between the stated end of the verbal abuse and the beginning

19    of the administrative proceedings.  For Ms. Ma's 2008 statement, there is an approximately six-

20    year gap.  Accordingly, to the extent this verbal abuse creates an independent claim from

21    discrimination it falls outside the two-year statute of limitations provided by the FHAA.  42 U.S.C.

22    § 3613(a)(1)(A) ("An aggrieved person may commence a civil action  . . . not later than 2 years

23    after the occurrence or the termination of an alleged discriminatory housing practice.").

24    Accordingly, with respect to Plaintiffs' claim for Housing Discrimination Based on a

25    Hostile Living Environment, the motions to dismiss are GRANTED without leave to amend.  The

26    Court grants the motions without leave to amend for two reasons.  First, as discussed above, a

27    statutory time bar exists that precludes this claim.  Second, this Court previously dismissed the

28

United States District Court
Northern District of California

25

FAC because Defendants failed to allege facts showing that any actions were taken "because of a handicap." Here, the Court similarly dismisses the claim for Housing Discrimination Based on a Hostile Living Environment because Plaintiffs have not adequately alleged that any statements were made "because of a handicap." Thus, because Plaintiffs have been unable to cure the deficiencies the Court previously identified, the Court concludes that further amendment would be futile.

<strong>c.      Housing Discrimination Based on Discriminatory Statements Made in Connection with the Sale or Rental of a Dwelling Under the FHAA, 42 U.S.C. § 3604(c)</strong>

The FHAA makes it unlawful "[t]o make . . . any notice [or] statement, . . . with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap." This provision applies to "all written or oral notices or statements by a person engaged in the sale or rental of a dwelling." 24 C.F.R. § 100.75(b). Under § 3604(c), courts ask whether "the alleged statement at issue would suggest a preference to an 'ordinary reader or listener.'" *Pack v. Fort Washington II*, 689 F. Supp. 2d 1237, 1245 (E.D. Cal. 2009) (citation omitted). However, the Ninth Circuit has held that "[i]f the remark is unrelated to the decisional process, then it is insufficient to show discrimination." *Harris*, 183 F.3d at 1055. Other Ninth Circuit decisions have interpreted *Harris* as stating that a comment can be unrelated to the decisional process both (1) where the person making the statement has no influence on the decisionmaking with respect to the sale or rental of apartments, and (2) where the statement is made at a moment "temporally" unrelated to a discriminatory decision. *See Riesgo v. Edward D. Sultan Co., Ltd*, 156 F. App'x 939, 940 (9th Cir. 2005) ("His statements were both temporally and substantively unrelated to [the plaintiff's] termination process." (citing *Harris*, 183 F.3d at 1055)).

The Court dismisses the claim for Housing Discrimination Based on Discriminatory Statements Made in Connection with the Sale or Rental of a Dwelling for three reasons. First, Plaintiffs allege that Defendants violated this provision because Liu and Ms. Ma called Maria a "psycho." Opp'n at 5. However, Plaintiffs have not alleged that Liu or Ms. Ma are part of the "decisional process" for the "sale or rental" of a dwelling. *Harris*, 183 F.3d at 1055 (holding claim

United States District Court
Northern District of California

1  not barred because comment that "[t]he owners don't want to rent to Blacks" was made by a

2  person who "act[ed] as a filter for the [landlords]").  Unlike in *Harris*, there is no allegation here

3  that Liu or Ms. Ma acted as "filters" for the landlord for potential tenants.  Indeed, Ms. Ma was

4  just one of Maria's neighbors, and Liu was a social services coordinator at CDP.  There is no

5  allegation that either of them was involved in the decisionmaking process.  Additionally, at the

6  time the alleged comments were made, from 2004 to 2011, Maria already *was* a tenant, and

7  Maria's eviction did not occur until two years after the alleged statements ceased, on October 17,

8  2013.  Thus, these statements were made at a time that was "temporally" unrelated to Maria's

9  eviction.  *See Riesgo*, 156 F. App'x at 940 ("His statements were both temporally and

10  substantively unrelated to [the plaintiff's] termination process.").

11       Second, as with the claim for Housing Discrimination Based on a Hostile Living

12  Environment, this claim is subject to the two-year statute of limitations provided under the FHAA.

13  42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action  . . . not later than

14  2 years after the occurrence or the termination of an alleged discriminatory housing practice.").  As

15  noted above, Plaintiffs did not initiate administrative proceedings until October 17, 2014, ECF No.

16  52 at 35, which is approximately three years after the 2011 end-date for the verbal abuse identified

17  in the SAC.  Moreover, Ms. Ma's 2008 statements were made at least six years before.  Thus, the

18  FHAA's statute of limitations bars this claim.

19       Third, although Plaintiffs previously raised a cause of action based on § 3604, Plaintiffs

20  SAC and the opposition in response to Defendants' motions to dismiss are the first times Plaintiffs

21  have mentioned a claim specifically under § 3604(c) for Housing Discrimination Based on a

22  Discriminatory Statement Made in Connection with the Sale or Rental of a Dwelling.  This Court,

23  in its order on Defendants' prior motions to dismiss, specified that "Plaintiffs may not add new

24  causes of actions or parties without leave of the Court or stipulation of the parties pursuant to

25  Federal Rule of Civil Procedure 15."  First Order at 13.  Plaintiffs' failure to comply with this

26  Court's prior order warrants dismissal of this claim.

27       Therefore, Defendants' motions to dismiss Plaintiffs' claim for Housing Discrimination

28

Based on Discriminatory Statements Made in Connection with the Sale or Rental of a Dwelling Under the FHAA are GRANTED without leave to amend.  The Court denies leave to amend for three reasons.  First, the Court finds this claim to be legally futile because these statements were made at a time that was temporally unrelated to Maria's evictions proceedings.   Second, according to the FAC, the Eviction Notice, and the SAC, this claim involves statements made by a neighbor and an employee who coordinates social services at CDP, not any person who makes rental decisions, and were thus not made in connection with the sale or rental of a dwelling.  Third, as discussed above, under 42 U.S.C. § 3613(a)(1)(A), a statutory time bar exists that precludes this claim.  Finally, this claim has arisen for the first time in the SAC after a year of litigation.  The instant suit was filed on October 15, 2015 and made no mention of a claim for Housing Discrimination Based on Discriminatory Statements Made in Connection with the Sale or Rental of a Dwelling Under the FHAA.  ECF No. 1.  The FAC, filed on May 2, 2016, also made no mention of this claim.  ECF No. 52.  The Court then specified in the order granting dismissal of the FAC, that no additional causes of action could be brought without leave of Court or stipulation by the parties.  In contravention of that order, Plaintiffs added this defective claim for Housing Discrimination Based on Discriminatory Statements Made in Connection with the Sale or Rental of a Dwelling Under the FHAA without leave to amend or a stipulation.  The Court finds these actions are prejudicial to defendants, as they violate Federal Rule of Civil Procedure 15 and this Court's prior order, and bringing the claim now constitutes undue delay.  *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (finding "undue delay" and "prejudice" to be a valid reason for denying leave to amend).  Thus, the Court denies leave to amend on this claim.

The Court next turns to discuss Plaintiffs' claims under FEHA.

### 2. Second Cause of Action – California Fair Employment and Housing Act ("FEHA")

As with the claims under the FHAA, Plaintiffs' allege the following claims under FEHA: (1) Housing Discrimination Based on Eviction Under FEHA, Cal. Gov't Code § 12955(a), (k); (2)

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

Housing Discrimination Based on Hostile Living Environment Under FEHA, Cal. Gov't Code § 12927(c)(1); and (3) Housing Discrimination Based on Discriminatory Statements Made In Connection with Rental or Sale of a Housing Accommodation Under FEHA, Cal. Gov't Code § 12955(c).  Additionally, Plaintiffs bring a claim for Retaliation Under FEHA, Cal. Gov't Code § 12955(f).  In their respective motions to dismiss, Plaintiffs have moved to dismiss these claims. The Ninth Circuit has determined that "the same standards apply to FHA[A] and FEHA claims." *Walker*, 272 F.3d at 1131 n.8.  In fact, both parties have addressed the FEHA claims simultaneously with the FHAA claims.  Opp'n at 4 n.1 ("California's fair housing laws are virtually identical to federal fair housing and disability laws.").

As with the FHAA, Wen has standing to bring an FEHA claim for discriminatory eviction, but not for hostile living environment or discriminatory statements made in connection with the sale or rental of a dwelling based on the alleged verbal harassment of Maria.  On the other hand, Maria has standing to allege an FEHA claim for discriminatory eviction, hostile living environment, and discriminatory statements made in connection with the sale or rental of a dwelling.  However, Maria must obtain a guardian ad litem, and the guardian ad litem must bring the FEHA claim on Maria's behalf.  Therefore, the Court first addresses Wen's and Maria's FEHA claim for discriminatory eviction, then addresses Maria's FEHA claim for hostile living environment and discriminatory statements made in connection with the sale or rental of a dwelling.  The Court need not address whether Wen or Maria has standing on the FEHA claim for retaliation because the Court holds below that such a claim clearly would fail regardless.

a. **Housing Discrimination Based on Eviction Under FEHA, Cal. Gov't Code § 12955(a), (k)**

FEHA provides almost identical protections against evictions based on discriminatory reasons as the FHAA.  FEHA makes it unlawful "[f]or the owner of any housing accommodation to discriminate against or harass any person because of the . . . disability of that person."  Cal. Gov't Code § 12955(a).  Additionally, FEHA makes it unlawful "[t]o otherwise make unavailable or deny a dwelling based on discrimination because of . . . disability."  *Id.* § 12955(k).  Plaintiffs

1   must allege the same elements discussed above with respect to the FHAA claim: (1) an adverse

2   action must have occurred, (2) to a person with a disability, and (3) because of that disability.

3   *Hunt*, 814 F.3d at 1221–25.   As discussed in the FHAA section above, Maria, Wen, and Lee were

4   evicted, which is a sufficient adverse action under FEHA. *Johnson*, 145 F. Supp. 3d at 915 (finding

5   eviction to be sufficient under the FHAA and FEHA).

6           With respect to the second requirement, the existence of a disability, Plaintiffs have alleged

7   that Maria was evicted due to her "disability related behavior" that was caused by her dementia,

8   her "other mental disabilities," and her association with Lin, who allegedly has mental disabilities.

9   SAC ¶ 29.

10          The latter two disabilities have been inadequately alleged because Plaintiffs have failed to

11  allege facts that identify the disability or that show that the alleged disability limited Maria's or

12  Lin's "major life activities."  *See* Cal. Gov't Code § 12926 (defining disability as a "mental or

13  psychological disorder or condition . . . that limits a major life activity.").  At most, Plaintiffs have

14  alleged that Maria had "difficulty interacting with her neighbors" and was suspicious that they

15  were stealing things from her.  SAC ¶ 16.  Similarly, for Lin, Plaintiffs alleged at most that Lin

16  could not care for her parents.  Therefore, as with an FHAA claim, Maria's "other mental

17  disabilities" and Lin's "mental disabilities" cannot be the basis of the FEHA claim.  *See Bresaz*,

18  136 F. Supp. 3d at 1135 (requiring mental disabilities be alleged "with some factual specificity").

19          However, Maria has adequately alleged that she suffered a disability, her dementia, starting

20  in 2012.  This disability was adequately alleged under FEHA because (1) Plaintiffs identified the

21  mental disability, and (2) the disability made Maria "incapable to taking care of her own financial

22  and legal affairs," which "limits a major life activity."  SAC ¶ 27; Cal. Gov't Code § 12926.

23          Finally, the Court addresses whether the eviction has occurred "because of" the disability.

24  As under federal law, the California Court of Appeal, in *Wills v. Superior Court*, 195 Cal. App. 4th

25  143 (2011), recognized that discrimination based on conduct arising from a disability involves

26  discrimination based on that disability.  *Id.* at 164.  Therefore, because Plaintiffs have alleged that

27  (1) Maria was evicted due to her behavior, and (2) that behavior was related to her dementia,

28

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

1    Plaintiffs have adequately alleged discrimination "because of . . . disability." Cal. Gov't

2    Code § 12955(k).

3          Therefore, as with the FHAA claim for Housing Discrimination Based on Wen's and

4    Maria's Eviction, the Court DENIES Defendants' motions to dismiss as to Plaintiffs' claim for

5    Housing Discrimination Based on Maria's and Wen's Eviction Under FEHA.  However, this claim

6    only survives to the extent the discrimination is based on Maria's dementia.  To the extent the

7    Housing Discrimination claim is based on Maria's and Lin's other "mental disabilities," the Court

8    GRANTS Defendants' motions to dismiss without leave to amend.  Leave to amend is denied

9    because the Court previously dismissed the FAC based on Plaintiffs' failure to allege that any

10   discrimination occurred "because of" a disability.  Plaintiffs' failure to cure that deficiency shows

11   that further amendment would be futile.

12          **b.     Housing Discrimination Based on Hostile Living Environment Under FEHA, Cal. Gov't Code § 12927(c)(1)**

13          FEHA makes it unlawful to discriminate in the "provision of [] terms, conditions,

14   privileges, facilities, or services in connection with [] housing accommodations." Cal. Gov't Code

15   § 12927(c)(1).  As discussed above with respect to the FHAA claim under 42 U.S.C. § 3604(f)(2),

16   Plaintiffs argue that Liu and Ms. Ma's verbal statements to Maria that she was "psycho" created a

17   hostile living environment.  However, as under the FHAA, FEHA requires that the harassment

18   occur "because of" a disability.  Plaintiffs' complaint alleges that Maria suffered this verbal abuse

19   from 2004 until Wen moved into CDP in 2011.  SAC ¶ 18.  However, the SAC only contains

20   conclusory allegations that Maria suffered "mental health disabilities" during that time frame, and

21   contains no allegation that Maria suffered from dementia, the only adequately alleged disability in

22   the SAC, until 2012.  Therefore, Plaintiffs have failed to adequately allege that any of the

23   harassment that Maria suffered occurred "because of" a disability protected under FEHA.

24          Additionally, under FEHA, to have a cause of action a plaintiff must file an administrative

25   complaint within one year of the alleged discriminatory action.  Cal. Gov't Code § 12960 ("No

26   complaint may be filed after the expiration of one year from the date upon which the alleged

27

28
     Case No. 15-CV-04768-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1  unlawful practice or refusal to cooperate occurred.").  Here, although the alleged harassment

2  ceased in 2011, Plaintiffs did not file an administrative complaint until October 17, 2014, placing

3  the alleged harassment outside the one-year statute of limitations provided under FEHA.

4       Therefore, the Court GRANTS Defendants' motions to dismiss without leave to amend on

5  Plaintiffs' claim for Housing Discrimination Based on Hostile Living Environment Under FEHA.

6  Leave to amend is denied because (1) the allegations here are time barred, and (2) the Court

7  previously dismissed the FAC because Plaintiffs failed to allege that Maria suffered discrimination

8  because of a disability under FEHA, the same deficiency that warrants dismissal here.  Plaintiffs'

9  failure to cure that deficiency shows that further amendment would be futile.

10           **c.    Housing Discrimination Based on Discriminatory Statements**
                     **Made In Connection with Rental or Sale of a Housing**
11                   **Accommodation Under FEHA, Cal. Gov't Code § 12955(c)**

12       FEHA prohibits "any person to make . . . any notice, statement or advertisement, with

13  respect to the sale or rental of a housing accommodation that indicates any preference, limitation,

14  or discrimination based on . . . disability."  Cal. Gov't Code § 12955(c).  Plaintiffs argue that Liu's

15  and Ms. Ma's statements that Maria was "psycho" constitute statements that indicate a preference

16  based on disability.

17       First, as with the claim for Housing Discrimination Based on a Hostile Living

18  Environment, this claim is subject to FEHA's one-year statute of limitations for filing an

19  administrative complaint.  As noted above, Plaintiffs did not initiate administrative proceedings

20  until October 17, 2014, ECF No. 52 at 35, which is over one year after the 2011 end-date for the

21  verbal abuse identified in the SAC.  Therefore, FEHA's statute of limitations bars this claim.

22       Second, as under the FHAA, the FEHA requires the alleged discriminatory statements to be

23  made "with respect to the sale or rental of a housing accommodation."  Cal. Gov't Code

24  § 12955(c).  However, the SAC contains no allegations that Liu or Ms. Ma was involved in the

25  "decisional process" for the sale or rental of apartments at CDP.  *Harris*, 183 F.3d at 1055.

26  Additionally, the alleged statements were made from 2004 to 2011 at a time when no decision was

27  being made with respect to Maria's tenancy.  Maria was not evicted until October 17, 2013, two

28
   32

1  years after the alleged discriminatory statements ceased according to the SAC.  *See Riesgo*, 156 F.

2  App'x at 940 ("His statements were both temporally and substantively unrelated to [the plaintiff's]

3  termination process.").

4          Third, as discussed above with respect to the FHAA, this was a new claim brought in the

5  SAC that was argued for the first time in the opposition to the instant motions to dismiss.  This

6  Court stated in its order dismissing the FAC that "Plaintiffs may not add new causes of actions or

7  parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil

8  Procedure 15."  First Order at 13.  Plaintiffs have not sought leave of the Court and have not filed a

9  stipulation of the parties allowing the addition of this claim.  Thus, this claim must be dismissed.

10          Thus, the Court GRANTS Defendants' motions to dismiss on Plaintiffs' claim for Housing

11  Discrimination Based on Discriminatory Statements Made In Connection with Rental or Sale of a

12  Housing Accommodation Under FEHA without leave to amend. The Court denies leave to amend

13  for three reasons.  First, the Court finds this claim to be legally futile because it involves

14  statements made by a neighbor and an employee who coordinates social services at CDP, not any

15  person who makes rental decisions and at a time where no rental decisions were actually being

16  made.  Second, this claim is barred by FEHA's one-year statute of limitations.  Third, this claim

17  has arisen for the first time in the SAC after a year of litigation.  For the reasons discussed above,

18  adding this claim now constitutes undue delay and would be prejudicial to Defendants.  *See*

19  *Owens*, 244 F.3d at 712 (9th Cir. 2001) (finding "undue delay" and "prejudice" to be a valid

20  reason for denying leave to amend).  Thus, the Court denies leave to amend on this claim.

21                  **d.        Retaliation Under FEHA, Cal. Gov't Code § 12955(f)**

22          FEHA makes it unlawful "[f]or any owner of housing accommodations to harass, evict, or

23  otherwise discriminate against any person in the sale or rental of housing accommodations when

24  the owner's dominant purpose is retaliation against a person who has opposed practices unlawful

25  under this section." Cal. Gov't Code § 12955(f).  Here, Plaintiffs make no argument in their

26  opposition that Defendants retaliated against Maria.  Additionally, the SAC contains no evidence

27  that Maria, Wen, or Lee took actions to "oppose[] practices unlawful" that would allow a claim for

28                                                         33

United States District Court
Northern District of California

1  Retaliation Under FEHA.  Therefore, the SAC provides no basis to conclude that a retaliation

2  occurred in this case.

3          Accordingly, the Court GRANTS the motions to dismiss without leave to amend as to

4  Plaintiffs' claim for Retaliation Under FEHA.  The Court denies leave to amend because Plaintiffs'

5  failure to even argue the issue in their opposition indicates a waiver of this claim.  *Qureshi v.*

6  *Countrywide Home Loans, Inc.*, 2010 WL 841669, at *6 n. 2 (N.D. Cal. Mar. 10, 2010) (deeming

7  plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss, an

8  "abandonment of those claims"); *see also Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197,

9  1210 (N.D. Cal. 2013) (finding that failure to respond as to certain claims constituted a waiver of

10 those claims).

### 3.      Violation of Right to Privacy Under Cal. Civ. Code § 1798.81.5(b)

12         Plaintiffs argue for the first time in their opposition to the instant motions that Defendants

13 violated California privacy laws.  *See* Cal. Civ. Code § 1781.81.5(b) ("A business that owns,

14 licenses, or maintains personal information about a California resident shall implement and

15 maintain reasonable security procedures and practices appropriate to the nature of the information,

16 to protect the personal information from unauthorized access, destruction, use, modification, or

17 disclosure.").  Plaintiffs make this argument in their opposition even though a violation of privacy

18 rights was not alleged in the original complaint, the FAC, or the SAC, and the Court specified in

19 the order granting dismissal of the FAC that "new causes of action" could not be added in the SAC

20 "without leave of the Court or stipulation of the parties."   First Order at 13.  Additionally, this

21 cause of action has not even been alleged in the *current* operative complaint, the SAC.

22         Therefore, the Court GRANTS Defendants' motions to dismiss with prejudice with respect

23 to any claim for violation of Plaintiffs' right to privacy under California law.  Leave to amend is

24 denied because Plaintiffs raise this cause of action for the first time in their briefing after never

25 before mentioning it in the instant suit.  The instant suit was filed on October 15, 2015, and no

26 mention of privacy laws was mentioned in that complaint.  ECF No. 1.  The FAC, filed on May 2,

27 2016, also made no mention of this claim.  ECF No. 52.  Finally, even the SAC, filed on

28
                                                      34

September 8, 2016, made no mention of this claim.  ECF No. 104.  After pursuing litigation against Defendants for a year in a case where Plaintiffs were in possession of all of the relevant facts, Plaintiffs have engaged in undue delay by only making the argument in their opposition to the second round motions to dismiss.  *Leadsinger*, 512 F.3d at 532 (allowing denial of leave to amend due to "undue delay").  Allowing Plaintiffs to add this new claim would cause prejudice to the Defendants as the claim would expand discovery and the scope of litigation over a year after the case was originally filed.  *See Jackson v. Bank of Hawaii*, 902 F. 2d 1385, 1387 (9th Cir. 1990) (denying leave to amend due to undue delay and the prejudice that would be caused by additional discovery after amendment).  Therefore, the Court denies leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court rules as follows:

- With respect to Wen's and Maria's claims under the FHAA, 42 U.S.C. § 3604(f)(1), and the FEHA, Cal. Gov't Code § 12955(a), (k), which are based on the eviction of Maria and Wen, the Court DENIES Defendants' motions to dismiss.

- With respect to all other claims, the Court GRANTS Defendants' motions to dismiss with prejudice.

- Plaintiffs must file a motion for appointment of a guardian ad litem for Maria within 21 days or her claims will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: January 24, 2017

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

Case No. 15-CV-04768-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California